UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| OSCAR GALLARDO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-cv-00226 |
| | § | |
| MIDLAND FUNDING, LLC, and | § | With Jury Demand Endorsed |
| MIDLAND CREDIT MANAGEMENT, INC., | § | |
| | § | |
| Defendants. | | |

## COMPLAINT

TO HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff, Oscar Gallardo ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Midland Funding, LLC ("MF"), and Midland Credit Management, Inc. ("MCM"), (MF and MCM are collectively referred to as the "Defendants"), and states as follows:

### I. INTRODUCTION

1.      Defendant MCM, the servicer of the subject unsecured credit accounts, acting independently and as an agent for MF, its principal and the owner of the subject debt, engaged in willful, malicious, coercive, deceptive and harassing actions against Plaintiff in furtherance of Defendants' efforts to illegally collect on the accounts from Plaintiff, while his chapter 7 bankruptcy case was pending and when Defendants were legally prohibited from taking any collection actions against Plaintiff on the accounts in accordance with the bankruptcy automatic stay. Notwithstanding Defendants' knowledge of the foregoing, MCM engaged in coercive and deceptive collection actions against Plaintiff and made harassing contacts with him, violating the automatic stay and applicable state, federal and common law, even after Plaintiff made cease and desist requests to MCM.

2.      Specifically, MCM: 1) sent Plaintiff numerous deceptive notices and correspondences demanding payment or actions from Plaintiff to coerce him to make payment to MCM; 2) made collection calls to Plaintiff; 3) impermissibly obtained and used Plaintiff's confidential, personal and financial information in his TransUnion consumer reports; and 4) made misrepresentations to Plaintiff and TransUnion that it had a right to collect on the accounts during Plaintiff's Bankruptcy Case while the automatic stay was in effect.

3.      Plaintiff claims Defendants violated: 1) 15 U.S.C. § 1681 *et seq*., known as the Fair Credit Reporting Act (the "FCRA"); 2) the Texas Debt Collection Act, Texas Finance Code § 392.001 *et seq.* (the "TDCA"); 3) the Federal Fair Debt Collection Practices Act (the "FDCPA"); 4) Plaintiff's common law privacy rights; and 5) the automatic stay of the United States Bankruptcy Court for the Western District of Texas, El Paso Division. Plaintiff also brings a declaratory judgment action, seeking a declaration from the Court that Defendants violated the automatic stay, and Plaintiff seeks to recover actual, statutory, and punitive damages, as well as legal fees and expenses, from Defendants joint and severally.

## II. PARTIES

4.      Plaintiff is a natural person residing in El Paso County, Texas and a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c), the TDCA, Tex. Fin. Code § 392.001(1), and the FDCPA, 15 U.S.C. § 1692a(3).

5.      Defendant MF is a foreign limited liability company and may be served by delivering a summons to its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E 7th St., Suite 620, Austin, TX 78701-3218.

6.     Defendant MCM is a foreign, for-profit corporation and may be served by delivering a summons to its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E 7th St., Suite 620, Austin, TX 78701-3218.

7.     Defendants are both a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b) and a "creditor," "debt collector," and/or "third-party debt collector" as defined by the TDCA, Tex. Fin. Code §§ 392.001(3), (6) and (7). Defendant MCM is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a.

8.     Defendants are both a "user" of consumer credit and other financial information as said terms are defined under the FCRA and furnishers of consumer credit information to Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively the "Credit Reporting Agencies" or "CRAs").

9.     The debt on the subject accounts that Defendants were attempting to collect was for "consumer debt" as defined by the TDCA, Tex. Fin. Code § 392.001(2) and the FDCPA, 15 U.S.C. § 1692a.

### III. JURISDICTION AND VENUE

10.     This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1681p and 28 U.S.C. §§ 1331, 1334, 1367 and 2201-2202.

11.     Venue is proper this district because Defendants transact business in this district, Plaintiff filed his bankruptcy case in this district, and the conduct complained of occurred in this district.

### IV. FACTUAL ALLEGATIONS

**A.     Plaintiff Listed the Subject Accounts and Unsecured Credit Card Debt in his Bankruptcy Case.**

12.     On June 5, 2018, Plaintiff filed a Chapter 7 bankruptcy in case number 18-30930-hcm (the "Bankruptcy Case") in the United States Bankruptcy Court for the Western District of Texas, El Paso Division (the "Bankruptcy Court").

13.     Included with Plaintiff's bankruptcy petition was **"Official Form 106E/F Schedule E/F: Creditors Who Have Unsecured Claims"** ("Schedule E/F") Plaintiff listed, in relevant part, the following creditors and accounts:

> 1) "Best Buy Credit Services" – Account ending in digits 7140 and later MCM Account No. xxxxxx2474 ("Best Buy Account");
>
> 2) JC Penney/Synchrony Bank ("JCP") – Account ending in the digits 2808 and later MCM Account No. xxxxxx4106 ("JCP Account");
>
> 3) Lowe's Consumer Credit Card/Synchrony Bank ("Lowes") – Account ending in digits 2669 and later MCM Account No. xxxxxx6375 ("Lowes Account");
>
> 4) Radio Shack Credit Plan ("Radio Shack") – Account ending in the digits 6979 and later MCM Account No. xxxxxx9051 ("Radio Shack Account"); and
>
> 5) Shell ("Shell") – Mastercard Account ending in the digits 4372 and later MCM Account No. xxxxxx0318 ("Shell Account").

All of the above Accounts are collectively referred to as the "Accounts".

14.     True and correct copies of the relevant pages from Schedule E/F are attached hereto as Exhibit "A" and incorporated herein by reference.

15.     At some point MF purchased the debt on the Accounts and MCM began servicing and collecting on them for MF.

16.     On October 17, 2017, prior to Plaintiff filing his Bankruptcy Case, MF filed a lawsuit against Plaintiff for a claim on a debt, styled, *Midland Funding, LLC, vs Oscar Gallardo*, Case No. 317-01721-DB, In the Justice of the Peace No. 3, El Paso County, Texas ("JP Case"). Plaintiff identified the Lawsuit in his Statement of Financial Affairs, Official Form 107, which he included and filed with his bankruptcy petition, and he identified MF and its address in the Creditor Matrix to his bankruptcy petition.

17.      True and correct copies of the relevant pages from Plaintiff's Statement of Financial Affairs are attached hereto as Exhibit "B" and incorporated herein by reference.

**B.     After Plaintiff Filed his Bankruptcy Case, the Automatic Stay Imposed by 11 U.S.C. § 362 Went into Effect and Prohibited All *In Personam* Debt Collection Activity Against Plaintiff While his Bankruptcy Case was Pending.**

18.     On or about June 7, 2018 and/or June 8, 2018, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Official Form 309A (For Individuals or Joint Debtors) **Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline**" ("341 Notice"), to the Creditors listed in Plaintiff's Bankruptcy Case, including, in part, Defendant MF, by first-class or electronic mail.

19.     The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. § 362 and expressly states, in relevant part, as follows:

> The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

The 341 Notice sent to the MF was not returned, creating a presumption it was received by MF.

**COMPLAINT**                                                                                           **Pg- 5 of 32 -**

20.     A true and correct copy of the 341 Notice is attached hereto as Exhibit "C" and incorporated herein by reference.

21.     Defendant MCM received notice of Plaintiff's Bankruptcy Case through MF, a third party, or independently.

22.     On July 23, 2018, MF filed a motion to dismiss the JP Case and on August 6, 2018 an order of dismissal was entered therein.

**C.     During Plaintiff's Bankruptcy Case, While the Automatic Stay was in Effect, Defendants Engaged in Prohibited Collection Action Against Plaintiff on the Subject Accounts.**

23.     While Plaintiff's Bankruptcy Case was pending and the automatic stay was active, pursuant to 11 U.S.C. § 362, MCM, acting as a debt collector and an agent for MF, its principal and the owner of the debt on the Accounts, engaged in *in personam* debt collection activity against Plaintiff on the Accounts by:

    (1)     Sending Plaintiff at least 11 letters and notices demanding payment or actions from him to coerce and deceive him to pay MCM on the Account(s);

    (2)     Making collection calls to Plaintiff;

    (3)     Impermissibly obtaining and using Plaintiff's TransUnion consumer report(s) and confidential financial information therein at least 10 times; and

    (4)     Misrepresenting information to TransUnion and Plaintiff that it had a right to collect on the Accounts during Plaintiff's Bankruptcy Case to deceptively collect on the Account(s).

**1)     Defendant MCM Sent Plaintiff at Least Eleven (11) Demand Letters and Notices on the Account(s), Demanding Payment and/or Actions from Plaintiff to Coerce His Payment.**

24.     On or about June 20, 2018, MCM sent Plaintiff 3 demand letters, one for each of the following Accounts: the Lowes Account, Radioshack Account, and Shell Account, complete with self-addressed, detachable payment coupons and return envelopes. The letters inform Plaintiff that MCM "is the debt collection company, which will be collecting on, and servicing your account." They also state that there is a "Current Balance" followed by a dollar amount for the respective account ($1,723.03 – Lowes Account, Radioshack - $698.13" and Shell Account - $1,353.59). The letters also instruct Plaintiff to, "CALL US TODAY!" at the provided toll-free phone number and present Plaintiff with three "AVAILABLE PAYMENT OPTIONS." The letters also include a section entitled "Benefits of Paying Your Debt," followed by a list of "benefits," including: Save hundreds of dollars … "if you pay by 07-20-2018;" "Put this debt behind you;" "No more communication on this account;" and "Peace of mind." The backs of the demand letters include the FDCPA Mini-Miranda warning, informing Plaintiff, "[t]his is an attempt to collect a debt" and "[a]ny information obtained will be used for that purpose" (the "Mini-Miranda Warning") and state that MF is the "Current Creditor *The sole owner of this debt*" and MCM is the "Current Servicer." The detachable, self-addressed payment coupons have printed on them: the respective "Current Balance" amount; "Total Enclosed" followed by a blank space for Plaintiff to fill in the dollar amount; and "Important Payment Information," followed by instructions for Plaintiff to: "**Make checks payable to**: Midland Credit Management," "Enter your MCM Account # on all payments" and "Mail Payments to: Midland Credit Management, Inc.," followed by MCM's pre-printed address.

**COMPLAINT**

25.     Attached hereto as Exhibits "D," "E" and "F" are redacted copies of the 6/20/18 demand letters MCM sent to Plaintiff on the Lowes Account, Radioshack Account, and Shell Account, respectively, which are incorporated herein by reference.

26.     On or about June 22, 2018, MCM sent Plaintiff a "Pre-Legal Notification" on the JCP Account, complete with self-addressed, detachable payment coupon and return envelope, threatening litigation and informing Plaintiff that MCM "has made several attempts to contact you regarding this account" and warning Plaintiff MCM was .."considering forwarding this account to an attorney in your state for possible litigation." The letter threatens Plaintiff that if MCM does not … "hear from you or receive payment by 08-06-2018, we may proceed with forwarding this account to an attorney." The letter informs Plaintiff he has options to, "Pay your full balance of $4,819.08" or "Call us to see how to qualify for discounts and payment plans." It also notes that if the account goes to an attorney, flexible options may no longer be available and "**We encourage you to call us: (800) 939-2353**." It also states, "**Once your account is paid: Collection calls will stop on this account**" and "**Collection letters will stop on this account**." The detachable, self-addressed payment coupon has printed on it: "Current Balance $4,819.08;" "Total Enclosed" followed by a blank box for Plaintiff to fill in the dollar amount; and "Important Payment Information," followed by instructions for Plaintiff to: "**Make checks payable to**: Midland Credit Management," "Enter your MCM Account # on all payments" and "Mail Payments to: Midland Credit Management, Inc.," followed by MCM's pre-printed address.

27.     A redacted copy of the notice MCM sent to Plaintiff dated 6/22/2018 is attached hereto as Exhibit "G" and incorporated herein by reference.

**COMPLAINT**                                                                                    **Pg- 8 of 32 -**

28.     On or about August 2, 2018, MCM sent Plaintiff 2 demand letters, one on the Lowes Account and another on the Shell Account, complete with self-addressed, detachable payment coupons and return envelopes. The letters congratulate Plaintiff that he "had been **pre-approved** for a discount program designed to save you money" and request he "Choose the Option That Works for You", listing three payment options, similar to the options in the 6/20/18 demand letters, but noting the payment due date for these options is 09-01-2018, which the letters also state is the "Offer Expiration date." In the letters, MCM instructs Plaintiff to "[a]ct now to maximize your saving and put this debt behind you" and call MCM at the provided phone number and to "[p]ay online today." The letters also state there is a "Current Balance" followed by a dollar amount for the respective account ($1,723.03 – Lowes Account and Shell Account - $1,353.59). The backs of the letters include the Mini-Miranda Warning, and the detachable, self-addressed payment coupons have printed on them: the respective "Current Balance" amount; "Total Enclosed" followed by a blank space for Plaintiff to fill in the dollar amount; and "Important Payment Information," followed by instructions for Plaintiff to: "**Make checks payable to**: Midland Credit Management," "Enter your MCM Account # on all payments" and "Mail Payments to: Midland Credit Management, Inc.," followed by MCM's pre-printed address.

29.     Redacted copies of the demand letters on the Lowes Account and Shell Account dated 08/02/2018 are attached hereto as Exhibits "H" and "I", respectively, and incorporated herein by reference.

30.     On or about August 8, 2018, MCM sent Plaintiff a demand letter on the Radioshack Account, identical in form to the August 2, 2018 demand letters MCM sent to Plaintiff on the Lowes and Shell Accounts. This letter also was complete with a self-addressed, detachable

**COMPLAINT**                                                                          **Pg- 9 of 32 -**

payment coupon and return envelope and congratulates Plaintiff that he "had been **pre-approved** for a discount program designed to save you money" and requests he "Choose the Option That Works for You", listing three payment options and noting the payment due date for these options is 09-07-2018, which the letter also states is the "Offer Expiration date." In the letter, MCM instructs Plaintiff to "CALL US TODAY!" and notes that if the proposed options do not work for him, he can call an Account Manager to set up a payment plan. The letter includes the Mini-Miranda Warning, and the detachable, self-addressed payment coupon has printed on it: "Current Balance $698.13;" "Total Enclosed" followed by a blank box for Plaintiff to fill in the dollar amount; and "Important Payment Information," followed by instructions for Plaintiff to: "**Make checks payable to**: Midland Credit Management," "Enter your MCM Account # on all payments" and "Mail Payments to: Midland Credit Management, Inc.," followed by MCM's pre-printed address.

31.     A redacted copy of the letter dated 08/08/2018 MCM sent to Plaintiff is attached hereto as Exhibit "J" and incorporated herein by reference.

32.     On or about August 15, 2018, MCM, sent Plaintiff correspondence on the JCP Account, instructing Plaintiff to call MCM at the provided toll-free phone number to pay off the account and notifying him, "**[w]e are offering you 40% OFF your balance to help you eliminate your debt while saving money**." In the letter, MCM presents Plaintiff with three different options to make partial payments on the stated "Current Balance $4,819.08." The letter also includes a detachable, self-addressed payment coupon and return envelope, instructing Plaintiff to "**[m]ake checks payable to:**" MCM and mail payments to MCM.  The back of the demand letter includes the FDCPA Mini-Miranda warning stating "[t]his is an attempt to collect a debt" and "[a]ny

information obtained will be used for that purpose." It also states that MF is the "Current Creditor *The sole owner of this debt*" and MCM is the "Current Servicer."

33.     A redacted copy of the demand letter dated 08/15/18 from MCM to Plaintiff is attached hereto as Exhibit "K."

34.     On or about August 22, 2018 and August 25, 2018, MCM sent Plaintiff additional collection letters on the Account(s) requesting payment and/or actions from Plaintiff to coerce his payment.

35.     On or about March 5, 2018, Defendant sent Plaintiff correspondence regarding the Best Buy Account, thanking him for making payments and that the account was satisfied, but warning him if payment is declined or returned for any reason, the letter is null and void.

36.     A redacted copy of the letter dated 03/05/19 from MCM to Plaintiff is attached hereto as Exhibit "L."

    **2)      During Plaintiff's Bankruptcy Case, Defendant MCM Made Collection Calls to Plaintiff.**

37.     While the automatic stay was in effect, forbidding all creditors and debt collectors from contacting Plaintiff regarding the Accounts, MCM made at least 2 collection phone calls to Plaintiff seeking payment on the Account(s). These calls were made on June 24, 2018 and June 28, 2018. Moreover, MCM made these prohibited phone calls to Plaintiff's private phone line, the number to which Plaintiff only used for business purposes which he did not provide to any creditors or debt collectors.

    **3)      During Plaintiff's Bankruptcy Case, Defendant MCM Impermissibly Obtained and Used Plaintiff's Confidential, Personal and Financial Information in his TransUnion Credit File at Least 10 Times.**

**COMPLAINT**                                                                                                    **Pg- 11 of 32 -**

38.     In pursuit of Defendants' illegal *in personam* collection actions against Plaintiff, MCM furnished false information to TransUnion that it could legally collect on the Account(s), which were purportedly collectible during the Bankruptcy Case, so it could impermissibly conduct account review inquiries on the Account(s) and illegally access Plaintiff's protected TransUnion credit file and obtain and use Plaintiff's consumer report(s) containing his confidential, personal and financial information. Despite the fact the automatic stay was in effect, which, by operation of law, made the debt on the Accounts legally uncollectible from Plaintiff, MCM took these prohibited actions.

39.     Specifically, MCM impermissibly accessed Plaintiff's TransUnion credit file and then obtained and used his consumer report(s) on the following days:

1.  June 8, 2018 (two times);

2.  June 9, 2018 (three times);

3.  June 14, 2018;

4.  August 15, 2018 (two times); and

5.   August 20, 2018 (two times).

40.     Redacted and relevant excerpts from Plaintiff's TransUnion credit report created on 06/03/2019 showing MCM's impermissible Account Review Inquiries, the dates and occurrences listed above (collectively the "Account Reviews"), are attached hereto as Exhibit "M."

41.     In conducting the impermissible Account Reviews, MCM furnished and certified false information to TransUnion that its purpose for conducting the Account Reviews was for legal collection purposes; however, this was false because all creditors and debt collectors were legally prohibited from collecting on the Accounts from Plaintiff while his Bankruptcy Case was pending

and the automatic stay was in effect. Plaintiff, moreover, never reaffirmed the debt on the Accounts.

42.     Each time MCM conducted one of the impermissible Account Reviews, it would have been reminded of Plaintiff's pending Bankruptcy Case, as detailed information about it, including, in part, the date filed, was in his TransUnion credit file.

**4)     During Plaintiff's Bankruptcy Case, Defendant MCM Made Misrepresentations to Plaintiff to Deceive and Coerce Him into Making Payments on the Account(s).**

43.      The misrepresentations MCM made to TransUnion, that it had a permissible purpose to conduct the Account Reviews for legitimate collections on the Account(s) and could legally access Plaintiff's protected credit file, were also misrepresented to Plaintiff, as his TransUnion credit reports include a section titled "Account Review Inquiries" wherein it states, "[t]he listing of a company's inquiry in this section means that they obtained information from your credit file in connection with an account review or other business transaction with you;" regarding the Account Reviews, Plaintiff's credit reports identify "**MIDLAND CREDIT MGMT**," the specific dates MCM made the requests, and MCM's alleged permissible purpose provided to TransUnion, here, "**Permissible Purpose**: COLLECTION." *See* attached Exhibit "H."

44.      At the times MCM conducted the Account Reviews, MCM knew its purported permissible purpose was false and knew this misrepresentation would be made to Plaintiff on his credit report. This was part of Defendant's orchestrated plan to collect on the Account(s) from Plaintiff, to deceive him into believing that MCM had a legal right to collect on the Account(s) during his Bankruptcy Case and to coerce payment from him.

**5)     During his Bankruptcy Case, Plaintiff Made Cease and Desist Requests to MCM from Contacting Him; Yet, MCM Continued its Harassing Contacts**

**COMPLAINT**                                                                                    **Pg- 13 of 32 -**

and Collection Actions.

45.     On or about August 17, 2018, Plaintiff called MCM and inquired why MCM was sending him collection letters after he filed his Bankruptcy Case and requested it stop. When Plaintiff called MCM, he spoke to one of its representatives, who informed him the balances on the Account(s) were immediately due and owing. MCM's representative aggressively, persistently and insistently demanded Plaintiff pay MCM on the Account(s), even though Plaintiff, to no avail, continued to inform her about his Bankruptcy Case and that MCM should not be contacting him to collect as a result. MCM's representative, however, would not stop demanding payment from him, so Plaintiff requested to speak to MCM's legal counsel to discuss the situation. Plaintiff was then placed on hold and transferred to three other MCM representatives, none of them legal counsel, who continued to demand payment from him.

46.     Despite Plaintiff informing MCM's many representatives about his Bankruptcy Case and requesting MCM cease contacting him, MCM still continued its illegal collection efforts during Plaintiff's Bankruptcy Case, as evidenced by the 2 Account Reviews it conducted a few days later on August 20, 2018 and its subsequent collection letters sent to Plaintiff on or about August 22, 2018 and August 28, 2018.

**D.     The Subject Debt Was Discharged as to Plaintiff's Personal Liability.**

47.      On September 12, 2018, the Bankruptcy Court issued an "**Order of Discharge**" ("Discharge Order"), granting Plaintiff a discharge as to pre-petition debts, including, the debt on the Accounts. The Discharge Order discharged Plaintiff from any personal liability for the debt created by the Accounts.

48.     A true and correct copy of the Discharge Order is attached hereto as Exhibit "N."

**COMPLAINT**                                                                   **Pg- 14 of 32 -**

49.     At no time during the pendency of Plaintiff's Bankruptcy Case did Defendants or any other person or entity object to or dispute the details or completeness of the claims on the Accounts listed in Plaintiff's Bankruptcy Petition.

50.     At no time did Plaintiff reaffirm the debt on the Accounts with any person or entity.

51.     At no time did the Bankruptcy Court declare the debt on the Accounts to be non-dischargeable.

## V. GROUNDS FOR RELIEF - COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. § 1681 *et seq.*)

52.     Plaintiff repeats, re-alleges, and incorporates by reference all of the foregoing paragraphs, as if fully rewritten here.

53.     It is illegal to conduct an account review to obtain access to a consumer's credit file and consumer information from a credit reporting agency without a permissible purpose. The FCRA establishes very specific limits as to when and why an entity can obtain a consumer report:

> (f) CERTAIN USE OR OBTAINING OF INFORMATION PROHIBITED. – A person shall not use or obtain a consumer report for any purpose unless –
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b (f).

54.      Section 1681b(a)(3) of the FCRA lists the only purposes for which a consumer report can be obtained; it states, in relevant part:

> (a) IN GENERAL. – * * * any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> ***
>
> (3) To a person which it has reason to believe –

**COMPLAINT**                                                                 Pg- 15 of 32 -

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

\* \* \*

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information-

\* \* \*

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

55.    Section 1681a(d)(1) defines a "consumer report" as:

(d) CONSUMER REPORT. –

(1) IN GENERAL. – The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a fact in establishing the consumer's eligibility for-

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681(b) of this title.

15 U.S.C. § 1681a (d)(1).

56.    During Plaintiff's Bankruptcy Case, MCM did not have a permissible purpose to obtain Plaintiff's consumer reports from any of the CRAs, as collections were forbidden by federal law, the automatic stay, and Plaintiff never sought credit from Defendants or had any business dealings with them after filing his Bankruptcy Case or consented to them pulling his credit.

Nevertheless, MCM accessed and used Plaintiff's consumer report(s) from TransUnion without a permissible purpose on at least 10 occasions, as detailed in Paragraph No. 31 above.

57.     To obtain and use Plaintiff's consumer report(s), which contained Plaintiff's confidential, personal and financial information, MCM conducted the Account Reviews and informed TransUnion it had a permissible collection purpose to access Plaintiff's credit file, even though there could not have been a legitimate purpose for collections after Plaintiff filed his Bankruptcy Case due to the automatic stay that was in effect and not lifted as to the Accounts for any creditor or debt collector to legally pursue collections on them against Plaintiff and Plaintiff never reaffirmed the debt.

58.     At the time MCM conducted the Account Reviews, MCM had actual knowledge it did not have a permissible purpose to obtain and use Plaintiff's consumer report(s) from any of the CRAs.

59.     At all relevant times, Defendants had actual knowledge about Plaintiff's Bankruptcy Case, and that, as a result of Plaintiff filing his Bankruptcy Case, the automatic stay was in effect, legally prohibiting all creditor and debt collectors from pursuing any collection from Plaintiff personally on the Accounts or communicating with Plaintiff about them. Accordingly, Defendants knew, at all times at issue, they were prohibited from conducting the Account Reviews for collection purposes and they did not have a permissible purpose to conduct them.

60.     MCM had actual knowledge that Plaintiff had not requested credit from it, had not initiated a business transaction with MCM after filing his Bankruptcy Case, and that, in fact, any credit obligation Plaintiff had on the Accounts had been unenforceable and stayed while the automatic stay was in effect. Thus, Defendants had actual knowledge they did not have any

permissible purpose to access, obtain and/or use Plaintiff's consumer report(s) and the confidential information contained therein from TransUnion, but they did so anyway.

61.     At the times MCM conducted the Account Reviews, Defendants had actual knowledge Plaintiff had not authorized them to access or review his consumer report(s), because the Accounts were legally uncollectible. Accordingly, at the times MCM conducted the impermissible Account Reviews, Defendants had actual knowledge they did not have a permissible purpose to obtain and use Plaintiff's consumer report(s) from the CRAs.

62.     Defendant MCM's requests to TransUnion to access and review Plaintiff's credit file to obtain and use his private, personal and financial information, under the guise of a legal collection purpose at times when it had actual knowledge MCM had no such permissible purpose or any permissible purpose to conduct the Account Reviews, constitutes knowing and willful violations of the FCRA.

63.     Plaintiff believes that, after reasonable discovery, he will be able to prove Defendants obtained and used his consumer report(s) and private, personal and financial information from TransUnion for the illegal purpose of attempting to collect from him personally on the Account(s).

64.     Plaintiff believes that, after reasonable discovery, he will be able to prove MCM used false pretenses, namely the representation(s) to TransUnion that it intended to use Plaintiff's consumer report(s) for a permissible purpose, when, under the FCRA, Defendants had no permissible purpose, to conduct the Account Reviews so Defendants could obtain and use Plaintiff's private, personal and financial information in Plaintiff's credit file for the illegal purpose of attempting to collect on the Account(s) from Plaintiff personally.

**COMPLAINT**                                                     **Pg- 18 of 32 -**

65.     Plaintiff believes that, after reasonable discovery, he will be able to prove Defendants were unwilling or unable to prevent their system(s) or agents from requesting and obtaining Plaintiff's consumer report(s) without a permissible purpose, thereby subjecting Plaintiff to having his private, personal and financial information disclosed without his consent, authorization or other legal justification.

66.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress, upon learning that Defendants were obtaining and using his confidential, private and personal information in his TransUnion credit file without a permissible purpose or his consent, entitling him to an award of actual damages in an amount to be proved at trial, plus attorneys' fees, together with the costs of this action, pursuant to 15 U.S.C. § 1681o.

67.     The injuries suffered by Plaintiff, as a direct result of MCM impermissibly obtaining and using his consumer report(s) for Defendants' benefit, were attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to punitive damages pursuant to 15 U.S.C. § 1681n(a)(2). Because Defendants' impermissible acquisition and use of Plaintiff's consumer report(s) will have a continuing adverse impact on Plaintiff, Defendant is liable for any and all future harm suffered by Plaintiff as a result of Defendant's actionable conduct.

## VI. Grounds for Relief - Count II

## Texas Finance Code – Texas Debt Collection Act (TDCA)

68.     Plaintiff repeats, re-alleges, and incorporates by reference the above Paragraphs Nos. 11 through 51, which are incorporated herein by reference, as if rewritten here in their entirety.

69.     Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

a.     Tex. Fin. Code § 392.301(a)(8) prohibits Defendant from threatening to take an action prohibited by law. Inasmuch as the automatic stay prohibited creditors and debt collectors from engaging in any *in personam* collection actions against Plaintiff while his Bankruptcy Case was pending, and the common law protects Plaintiff's privacy rights, Defendants' collection actions against Plaintiff at issue, including: MCM sending Plaintiff demand letters during his Bankruptcy Case; threatening to send the JCP Account to lawyers for litigation (*see* attached Exhibit "G," 6/22/18 letter), making forbidden collection calls to Plaintiff; and making misrepresentations to Plaintiff on his TransUnion credit reports in conjunction with the Account Reviews;  were threats by MCM to further engage in Defendants' illegal and harassing collection actions against Plaintiff related to the Account(s), a violation of the TDCA;

b.     Tex. Fin. Code § 392.304(a)(8) prohibits misrepresenting the character, extent, or amount of Plaintiff's debt. MCM misrepresented to Plaintiff, through its prohibited demand letters and contacts with Plaintiff at issue and on his TransUnion credit reports, that the Account(s) were collectible and that Plaintiff had to take actions to pay the debt, in furtherance of Defendants' prohibited collection efforts. These misrepresentations about the character, extent or amount of the subject debt were made to deceive Plaintiff into believing he had to pay MCM on the Account(s) when all collections on the Accounts were legally forbidden, thus, they were violations of the TDCA; and

c.     Tex. Fin. Code § 392.304(a)(19) prohibits Defendants' use of false representations or deceptive means to collect a debt, for the reasons stated in the preceding paragraphs (a) and (b), Defendants intentionally tried to coerce and deceive Plaintiff into paying the debt on the Account(s) when Defendants knew the Accounts were included in Plaintiff's active and pending Bankruptcy Case,

rendering the debt on the Accounts legally uncollectible from Plaintiff *in personam*.

70.     Under Tex. Fin. Code Ann. § 392.403, MCM's actions make Defendants' liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees. Also, Plaintiff's injuries resulted from Defendants' malice, actual fraud and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

71.     Because of MCM's conduct, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include his reasonable attorney's fees incurred in prosecuting these claims.

## VII. GROUNDS FOR RELIEF - COUNT III

## FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")

72.     Plaintiff repeats, re-alleges, and incorporates by reference the above Paragraphs Nos. 11 through 51, as if fully rewritten here.

73.     The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute prohibiting a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. § 1692 *et seq*. The FDCPA imposes civil liability on any person or entity that violates its provisions, establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

74.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose and forbids debt collectors from taking such action. The substantive heart of

the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

75.     In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692a. Additionally, Congress found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. *See* 15 U.S.C. § 1692b.

76.     Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to ensure debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

**COMPLAINT**                                                                    **Pg- 22 of 32 -**

77.     The FDCPA is a strict liability statute and provides for actual and statutory damages upon the showing of a single violation. Also, the FDCPA is a remedial statute and, therefore, must be construed liberally in favor of the debtor/consumer.

78.     The FDCPA is to be interpreted in accordance with the "least sophisticated consumer" standard. *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); *Graziano v. Harrison*, 950 F.2d 107, 111, fn5 (3rd Cir. 1991). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Id*.

79.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain per se violations of false and deceptive collection conduct. *See* 15 U.S.C. § 1692e(1) - (16).

80.     The deceptive and coercive collection actions of MCM at issue, by sending Plaintiff the notices and letters described hereinabove, making prohibited collection calls to Plaintiff, making misrepresentations to him on his credit reports in conjunction with the Account Reviews, and as further detailed in Paragraph No. 61 above, incorporated herein by reference, violate 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692f(1),

81.     All of MCM's actions at issue, described hereinabove, are the manifestations of Defendants' practices and policies to ignore the provisions of the Bankruptcy Code applicable to them and illegally collect or attempt to collect pre-petition debts from unsophisticated debtors.

**COMPLAINT**                                                                                            **Pg- 23 of 32 -**

## VIII. GROUNDS FOR RELIEF - COUNT IV

### INVASION OF PRIVACY

82.     Plaintiff repeats, re-alleges, and incorporates by reference the above Paragraph Nos. 11 through 51, which are incorporated herein by reference as if rewritten here in their entirety.

83.     MCM impermissibly obtaining and Defendants' using of Plaintiff's consumer report(s) from TransUnion, as a result of the Account Reviews, constituted an invasion of Plaintiff's private affairs and privacy rights. These invasions were ones that would be highly offensive to a reasonable person, because confidential, sensitive, personal and financial information is included in a consumer's consumer report from TransUnion, and, Plaintiff had not consented to Defendants pulling his credit reports from any of the CRAs and there was no permissible purpose to permit Defendants to obtain Plaintiff's consumer reports after Plaintiff filed his Bankruptcy Case, when collections on the Accounts was legally forbidden and there was no permissible purpose for Defendants to conduct an account review inquiry on the Account(s) to access and review Plaintiff's credit file and obtain his consumer reports. The wrongful acts of MCM caused injury to Plaintiff.

84.     MCM's correspondences and demand letters at issue and prohibited collection calls to Plaintiff were offensive and harassing communications and contacts with Plaintiff, constituting invasions of his privacy. Once he filed his Bankruptcy Case, Plaintiff had a reasonable and legitimate expectation not to be contacted or harassed by Defendants in furtherance of their efforts to illegally collect on the Account(s); Plaintiff believed he was protected by the automatic stay from being contacted by any creditors or debt collectors, including Defendants, seeking payment from him while his Bankruptcy Case was pending.  In fact, Plaintiff conveyed this to MCM through

**COMPLAINT**                                                                                            **Pg- 24 of 32 -**

his cease and desist requests; yet, MCM continued to contact him seeking payment on the Account(s) and conducted account reviews under false pretenses to obtain Plaintiff's confidential information in his credit file from TransUnion.

85.     Plaintiff's injuries resulted from Defendants' malice, entitling Plaintiff to recover exemplary damages pursuant to Texas Civil Practice and Remedies Code § 41.003(a).

## IX. GROUNDS FOR RELIEF - COUNT V

### VIOLATION OF THE AUTOMATIC STAY

86.     Plaintiff repeats, re-alleges, and incorporates by reference the above Paragraph Nos. 11 through 51, which are incorporated herein by reference as if rewritten here in their entirety.

87.     At all material times, Defendants had actual knowledge of Plaintiff's Bankruptcy Case.

88.     MCM's actions were willful acts in furtherance of Defendants' efforts to collect the debt on the Account(s) from Plaintiff, in violation of the automatic stay imposed by 11 U.S.C. § 362. Further, MCM's acts were harassing attempts to coerce and deceive Plaintiff to pay on the Account(s). Defendants' failure to comply with the automatic stay, despite being on notice of Plaintiff's Bankruptcy Case and the effect of automatic stay and after Plaintiff made cease and desist requests to MCM, illustrate Defendants' contempt for federal law and the automatic stay.

89.     The actions of MCM at issue, taken as an agent for MF and as a servicer on the Accounts, in sending Plaintiff the demand letters and correspondences at issue, making prohibited collection calls to Plaintiff, making misrepresentations to Plaintiff on his TransUnion credit reports, and obtaining and using his confidential, personal and financial information from TransUnion to collect on the Account(s), constitute harassing, coercive and/or deceptive actions

taken to collect a debt from Plaintiff in gross violation of the automatic stay imposed by 11 U.S.C. § 362.

90.    Specifically, Defendant violated that part of the automatic stay imposed by 11 U.S.C. § 362 that prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title…." 11 U.S.C. § 362(a)(6).

91.    Defendants knowingly and willfully violated the order of the Bankruptcy Court issued in Plaintiff's Bankruptcy Case. After this *prima facie* showing by Plaintiff, the duty falls on Defendants to show, as their only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability. Failing a showing by Defendants of their inability to comply with the orders of the Bankruptcy Court, Plaintiff must prevail on his claims, and Defendants must be held liable for knowingly and willfully violating the orders of the Bankruptcy Court. Any defense put forth by Defendants in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made to justify the conduct and actions of Defendant(s), and any allegation of a good faith exception should not be allowed.

92.    The orders of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here. No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

93.    Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to Defendants' violations of the orders of the Bankruptcy Court. Any burdening of Plaintiff with an obligation to police the misconduct of Defendants would be a complete derogation of the law. It is well-settled that each party subject to an order issued by a federal court is responsible for

ensuring its own compliance with the order and for bearing the cost of compliance. Any attempt by Defendants to mount such a defense in this proceeding would constitute a collateral attack on the automatic stay and orders of the Bankruptcy Court, which is prohibited. Any such defense put forth by Defendants in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made to justify for the conduct and actions of Defendants. No defense of failure to mitigate should be allowed.

94.     Plaintiff has been injured and damaged by Defendants' actions, and Plaintiff is entitled to recover judgment against Defendants for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendants' violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## X. GROUNDS FOR RELIEF – COUNT VI

### REQUEST FOR DECLARATORY RELIEF

95.     The allegations in the above Paragraphs Nos. 11 through 51 are re-alleged and incorporated herein by reference.

96.     As outlined in the preceding factual allegations and Counts I through V, above, Defendant(s) have violated the Bankruptcy Code with regard to the automatic stay. Plaintiff seeks a declaration that all of Defendant(s)' actions at issue constitute forbidden collection actions and contacts with Plaintiff in violation of the automatic stay, 11 U.S.C. § 362.

97.     Plaintiff is entitled to attorneys' fees and costs pursuant to the Federal Declaratory Judgment Act.

## XI. VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

98.     Plaintiff believes that, after reasonable discovery, he will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of Defendant(s), the principal(s), within the course and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendant(s) for all such actions under the doctrine of *respondeat superior* and/or vicarious liability; this includes, but is not limited to, MCM acting individually and as an agent for MF in servicing the Account(s) during the times at issue.

99.     Here, MF exercised much control over MCM in its handling, servicing and collections on the Account(s), and the actions of MCM are imputed on MF; thus, making MF vicariously liable for MCM's actions according to the principles of agency law. Further, MF is liable for its negligent hiring and/or supervision of MCM.

## XII. DAMAGES

100.     In addition to any damages previously stated hereinabove, the conduct of Defendant(s) has proximately caused Plaintiff past and future monetary loss; past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state; and other damages, evidence for all of which will be presented to the jury. Moreover, dealing with the consequences of Defendant(s)'s actions has cost Plaintiff time and mental energy, which are precious to him.

101.     Defendant(s)'s actions at issue not only brought back to Plaintiff all the stress and array of negative emotions he suffered in having to file for bankruptcy, but they were now increased, and a feeling of hopelessness, despair, extreme anxiety and worry, overtook him and increased with each harassing contact, demand for payment and threat of litigation he received

from MCM on the Account(s) after he filed his Bankruptcy Case and after MF filed the JP Case against him..

102.     As a result of MCM's actions at issue, Plaintiff has suffered an extreme degree of mental anguish and harm. Plaintiff has suffered a tremendous amount of stress, anxiety, nervousness, frustration, and anger which reached a level that physically affected him and negatively impacted his day-to-day life causing or exacerbating the frequency and degree of his headaches, loss of appetite, insomnia, night sweats, shortness of breath, hair loss, depression, panic attacks, loss of concentration and focus.

103.     The sanctity of Plaintiff's privacy is precious to him and to lose that as a result of MCM accessing his TransUnion credit file and Defendants obtaining his consumer reports with his confidential, personal and financial information without his consent or any legal basis has added further to Plaintiff's mental anguish, distress and harm. Plaintiff has no idea what Defendants intends to do with his private and personal information, which adds further to his frustration, uncertainty, anger, fear, defensiveness and distrust of Defendants, further adding to his emotional anguish and resulting physical harm and negatively impacting his day-to-day life.  In this day and age where data breaches have become commonplace, Plaintiff is also anxious and troubled about how safe his most private information is in the hands of Defendants, companies that are obtaining his information illegally and that have maliciously harassed him to pay on the Accounts when the debt on the Accounts was legally uncollectible.

104.     As a result of Defendant(s)'s actions, Plaintiff's work performance and productivity has been negatively impacted, causing him a loss of income. Also, his personal and professional relationships have been negatively impacted. Defendants'(s) actions also caused Plaintiff to

**COMPLAINT**                                                                      **Pg- 29 of 32 -**

withdraw socially and professionally which had a negative impact on his inter-personal and business relationships and daily life.

105. At all relevant times, Defendants knew, and it continue to know, that, pursuant to an order granted by a U.S. Bankruptcy Court and the Bankruptcy Code, debts that are subject to the automatic stay are not legally collectible, but Defendants made knowing, willful, and malicious corporate decisions to act contrary to their knowledge of bankruptcy law, to attempt to collect on the debt on the Account(s) when MCM had no right to engage in any of its actions at issue.

106. Plaintiff believes that, after reasonable discovery in this case, he will be able to show that all actions taken by, or on behalf of, Defendant(s) were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff and/or with the actual knowledge that such actions were in violation of the law.

107. Plaintiff believes that, after reasonable discovery, he will be able to show that Defendants have been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendants, intentionally and knowingly, have refused to correct their policies and procedures to comply with applicable laws, of which laws they are well-aware.

108. Plaintiff believes that, after reasonable discovery, he will be able to show that Defendants have engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with their established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts in bankruptcy, including, but not limited to, either individually or through their agent(s), contacting and harassing debtors during their respective bankruptcy cases, conducting impermissible account review inquires with the

**COMPLAINT**                                                                 **Pg- 30 of 32 -**

CRAs, and furnishing inaccurate and misleading information to the CRAs about accounts included in bankruptcy and misrepresenting information about Accounts in bankruptcies to debtors to deceptively collect on such accounts in violation of the automatic stay. Accordingly, Defendants are subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendants. Moreover, Plaintiff's injuries resulted from Defendant(s)'s malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

109.    Due to Defendant(s)'s conduct, Plaintiff was forced to hire counsel, and his damages include his reasonable attorneys' fees incurred in prosecuting his claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Oscar Gallardo, prays the Court:

A.      Enter judgment in favor of Plaintiff and against Defendants, joint and severally, for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the FCRA, TDCA, FDCPA, his privacy rights, the bankruptcy automatic stay and the Federal Declaratory Judgment Act;

B       Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Find that appropriate circumstances exist to render the declaratory relief sought by Plaintiff and render and make such declaration as requested;

D.      Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

E.      Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Respectfully submitted,

*/s/Marilyn S. Altamira*
Marilyn S. Altamira
State Bar Number 00796119
Federal I.D. No. 23237
maltamira@mancheelawfirm.com
MANCHEE & MANCHEE, PC
2745 North Dallas Parkway, Suite 420
Plano, Texas 75093
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF


## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

August 14, 2019                          */s/ Marilyn S. Altamira*
Date                                              Marilyn S. Altamira